UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NIKOLAI SARAKHMAN,

                        Plaintiff,

-against-

SUMITOMO MITSUI FINANCE AND
LEASING COMPANY, LTD.,

                        Defendant.

24-CV-5817 (JGLC)

**OPINION AND ORDER**

---

JESSICA G. L. CLARKE, United States District Judge:

    Plaintiff Nikolai Sarakhman ("Plaintiff"), who also goes by "Nick," alleges that Defendant Sumitomo Mitsui Finance and Leasing Company, LTD. ("Sumitomo" or "Defendant") discriminated against him on the basis of his Russian and Belarussian ancestry when it denied his credit application and purportedly refused to honor a financing agreement it reached with him. Plaintiff has asserted violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, Section 1981 of the Civil Rights Act, 42 U.S.C. § 1981, and related provisions of the New York State and City Human Rights Laws.

    Before the Court is Defendant's motion to dismiss pursuant to Rule 12(b)(6). Defendant argues that Plaintiff has not pled facts sufficient to show that Defendant acted with any discriminatory intent, or that Defendant ever took any adverse actions against him. ECF No. 13. As set forth in detail below, it is clear from the face of the complaint (and the documents incorporated therein) that Defendant never denied Plaintiff's application, and that Plaintiff has failed to allege facts giving rise to a plausible inference of discrimination.

    The Court therefore GRANTS the motion to dismiss. Plaintiff, however, will be provided leave to amend his complaint.

## BACKGROUND

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). The following facts are, unless otherwise noted, taken from the complaint and presumed to be true for the purposes of the instant motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Plaintiff Nikolai Sarakhman is a man of Russian and Belarussian descent who owns Byteks USA, LLC ("Byteks"). ECF No. 1 (the "Complaint" or "Compl.") ¶ 7. Byteks is a licensed freight carrier. *Id.* Defendant Sumitomo is a Japanese multinational company providing banking services. *Id.* ¶ 9. In January 2023, Plaintiff contacted Sumitomo to request financing for a truck he sought to purchase for his business. *Id.* ¶ 10. On February 6, 2023, Jason Gregory—Vice President and Regional Sales Manager at Sumitomo ("VP Gregory")—confirmed in an email to Plaintiff that he had been approved for financing, and that the approval would remain valid for 90 days. ECF No. 1-1 at 4. Plaintiff, however, needed additional time to find the truck he wanted. *Id.* at 3–4.

On March 20, 2023, Plaintiff emailed VP Gregory after he found a truck he wished to purchase using the financing from the previously approved loan. Compl. ¶ 13; ECF No. 1-1 at 4. The following day, VP Gregory confirmed that Plaintiff still had an open approval, and that Sumitomo could provide financing up to $171,000. Compl. ¶ 14. However, VP Gregory noted it would take "a day or so" for funds to be sent, and that it would take time for him to get "formal approval" if Plaintiff purchased a truck in an auction for an unknown dollar amount. ECF No. 1-

1 at 5. Plaintiff thereafter purchased a truck for $177,500 plus "auction fees" (later revealed to be $4,000). Compl. ¶ 15; ECF No. 1-1 at 6.

On March 31, 2023, Plaintiff informed Sumitomo of the $177,500 purchase price and auction fees. ECF No. 1-1 at 6. VP Gregory responded "[t]here is no information on the truck" and asked Plaintiff to provide that information and exact dollar amount so that he could "get it submitted to credit for approval." *Id.* VP Gregory also asked Plaintiff to provide the "specs on the truck in order to get the asset approved." ECF No. 1-1 at 7. A few days later, on April 2, 2023, Plaintiff provided the invoice for the truck and told VP Gregory he was working on getting a copy of the title. *Id.* Plaintiff alleges on that same day, he had a phone call with VP Gregory in which Plaintiff revealed his Russian and Belarussian ancestry and the fact that he immigrated to the United States as a child. Compl. ¶ 18. After this phone call, VP Gregory told Plaintiff that Sumitomo was looking through his social media activity, which Plaintiff described as "an unusual step" taken only after Defendant learned of his ancestry. *Id.* ¶ 19.

On April 3, 2023, VP Gregory asked Plaintiff to confirm he was the "100% owner of Byteks USA," and Plaintiff promptly confirmed he was. *Id.* ¶¶ 20, 21. VP Gregory then asked Plaintiff to confirm "Nikolai Sarakhman," rather than "Nick," was the sole owner of Byteks. *Id.* ¶ 22. Plaintiff again gave a prompt confirmation. *Id.* Two days later, on April 5, 2023, VP Gregory emailed Plaintiff, writing that Sumitomo's compliance team was "very thorough" and had questions regarding whether Plaintiff conducted any operations in Russia or Belarus. *Id.* ¶ 24. VP Gregory explained that the compliance inquiry arose because Plaintiff's company had the same name as an entity in Russia and Belarus "that [Sumitomo's] compliance has issues with . . ." ECF No. 1-1 at 11. Plaintiff responded he had no presence in either country, and that he only was "born in Russia and grew up in Belarus." Compl. ¶ 25. Plaintiff did state, however, that his

3

company "used to buy Belarusian made boots to sell in America" that he sold via e-Bay, Amazon, and their website. ECF No. 1-1 at 11. Plaintiff explained that due to the "current political situation" Byteks stopped buying these products and was "just liquidating leftovers." *Id.*

On April 10, 2023, VP Gregory informed Plaintiff that he had no control over the compliance process, and that Sumitomo's Sanctions team "completed their review" and were sending the case to the "Reputational Risk diversion [team] for review." Compl. ¶ 26. As a result, VP Gregory suggested to Plaintiff that he pursue other financing in case VP Gregory could not get Plaintiff an answer as quickly as he wanted. *Id.* A week later, Plaintiff demanded a yes or no answer; because VP Gregory remained unable to provide an update, he told Plaintiff he should assume it would be a "no" for the purposes of planning his next steps. *Id.* ¶¶ 27–28. Plaintiff subsequently secured a new loan from a different lender. *Id.* ¶ 29. Plaintiff alleges that as a result of Sumitomo's actions, he faced a delay in securing financing and subsequently lost a long-term contract with a food distribution company. *Id.* ¶¶ 29–31.

Plaintiff filed this action on July 31, 2024 alleging violations of ECOA, the Civil Rights Act, 42 U.S.C. § 1981 ("Section 1981"), and the New York State and New York City Human Rights Laws ("NYSHRL" and "NYCHRL" respectively). ECF No. 1. On October 22, 2024, Defendant moved to dismiss the complaint pursuant to Rule 12(b)(6). ECF No. 13, 13-1 ("Mem."). After Plaintiff missed his opposition deadline, the Court issued an order to show cause why the delay should be excused. ECF No. 19. The Court discharged that order on November 19, 2024 for good cause shown. Plaintiff filed his opposition on December 10, 2024. ECF No. 24 ("Opp."). Defendant filed a reply on January 9, 2025. ECF No. 27. On January 13, 2025, the Court stayed discovery pending resolution of the instant motion to dismiss.

**LEGAL STANDARD**

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

**DISCUSSION**

The discussion below proceeds as follows. First, the Court dismisses Plaintiff's ECOA discrimination and newly-pleaded notification claims because (1) Defendant did not actually "deny" his application; and (2) the Complaint does not sufficiently allege adequate comparators or facts that suggest any discriminatory intent. The Court then dismisses Plaintiff's Section 1981 claim on similar grounds.

I.     **Plaintiff Fails to Plausibly Allege an ECOA Discrimination Claim**

Defendant seeks dismissal of Plaintiff's ECOA claim by arguing that the Complaint fails to allege (1) any "denial" of a credit application; and (2) that Defendant showed a preference for

5

other applicants outside of Plaintiff's protected class. Mem. at 10–12. Plaintiff counters that at the 12(b)(6) stage, he only carries a "minimal burden" of alleging facts that support an inference of discrimination, and argues that Defendant did in fact deny his credit application. Opp. at 5–8. For the reasons set forth below, the Court dismisses the ECOA discrimination claim.

ECOA provides that it is "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction" on the basis "of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). Therefore, a plaintiff may bring suit for acts motivated by discriminatory intent or for policies that have a discriminatory impact. *Germain v. M & T Bank Corp*, 111 F. Supp. 3d 506, 525 (S.D.N.Y. 2015). Courts in this Circuit routinely analyze ECOA discrimination claims similar to Title VII discrimination claims by using the burden-shifting analysis stated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Germain*, 111 F. Supp. 3d at 525 (collecting cases). Under this framework, (1) a plaintiff has the initial burden of making out an initial showing of discrimination; (2) assuming a plaintiff can do so, the burden then shifts to the defendant to identify a non-discriminatory reason for its actions; and (3) as a final step, the burden shifts back to the plaintiff to demonstrate the defendant's stated reason was a pretext for discrimination. At the motion-to-dismiss stage, however, only the first step—the plaintiff's burden to allege a prima facie case of discrimination—is at issue. *See Baptiste v. City Univ. of New York*, 680 F. Supp. 3d 415, 421 (S.D.N.Y. 2023). It is a low burden, and the Second Circuit has "cautioned district courts against imposing too high a burden on plaintiffs alleging discrimination at the 12(b)(6) stage." *Doe v. Columbia Univ.*, 831 F.3d 46, 55 n.8 (2d Cir. 2016).

To establish a prima facie case of discrimination under ECOA, a plaintiff must demonstrate that: "(1) he was a member of a protected class, (2) he applied for credit from the

6

defendant, (3) he was qualified for credit but the defendant denied his credit application, and (4) the defendant continued to engage in the type of transaction in question with other parties with similar qualifications." *Germain*, 111 F. Supp. 3d at 526 (cleaned up). Because the ECOA analysis follows Title VII, a Plaintiff must provide "at least minimal support for the proposition that [Defendant] was motivated by discriminatory intent." *Littlejohn v. City of New York,* 795 F.3d 297, 311 (2d Cir. 2015)); *see also Kwiatkowski v. Polish & Slavic Fed. Credit Union*, No. 11-CV-3947, 2011 WL 6225390, at *3 (E.D.N.Y. Dec. 12, 2011), *aff'd*, 511 F. App'x 117 (2d Cir. 2013) (stating that for an ECOA claim to survive motion to dismiss, plaintiff must allege facts to enable the reasonable inference that the defendant denied the credit application "because of, and not simply in spite of, his [race].").

  To reiterate, the Complaint alleges that Sumitomo originally approved financing up to $171,000 for Plaintiff, but also informed him that "formal approval" would be needed if Plaintiff purchased a truck in an auction for a then unknown dollar amount. Compl. ¶ 14; ECF No. 1-1 at 5. Plaintiff then purchased a truck for more than the initial approval amount, which also included an additional $4,000 in auction fees. Compl. ¶ 15; ECF No. 1-1 at 6. Thereafter, Plaintiff revealed his Russian and Belarussian ancestry, which prompted questions from Sumitomo. Compl. ¶¶ 18–25. Throughout that process, VP Gregory kept Plaintiff apprised of the compliance process, and also told him he personally had no control over the process. *See* ECF No. 1-1. However, recognizing Plaintiff's situation, VP Gregory suggested that Plaintiff consider pursuing other financing in case Sumitomo could not give him an answer quick enough. *Id.* at 12. Plaintiff then demanded a "yes" or "no" answer, and VP Gregory told Plaintiff he should assume it would be a no for the purposes of planning his next steps. *Id.*

Considering these allegations, Plaintiff fails to satisfy even a "minimal burden" in making out a prima facie case of ECOA discrimination. Plaintiff fails to plead facts supporting the fourth element—that Defendant continued to engage in the type of transaction in question with other parties with similar qualifications. Plaintiff has not alleged any facts indicating that other credit applicants in a similar position as Plaintiff were treated more favorably. Nor is there any allegation that Sumitomo inconsistently or arbitrarily conducts compliance checks. Thus, the fourth element has not been adequately pled. *See Germain*, 111 F. Supp. 3d at 533 (denying ECOA discrimination claim where the plaintiffs failed to adequately plead the fourth element of a prima facie case).

Plaintiff also fails to plead the third element of ECOA discrimination requiring a denial of his application. Plaintiff appears to acknowledge that Sumitomo did not *actually* deny his application, arguing instead that Sumitomo "effectively" denied his application due to the delay in granting him financing. Opp. at 5–6. To be sure, an *unreasonable* delay in assessing a credit application could give rise to an ECOA claim. *See Thompson v. Marine Midland Bank*, 198 F.3d 235, 1999 WL 752961 (Table), at *2 (2d Cir. 1999) (in ruling on a summary judgment motion, observing that unreasonable delay by defendant could indicate disparate treatment). But that is not what Plaintiff has claimed here. Opp. at 5–7. And Plaintiff's allegations that Defendant did not complete its review on Plaintiff's desired timeline does not automatically constitute a denial of Plaintiff's application.

Even if Plaintiff's claim was based on Defendant's delay, the Complaint does not allege facts indicating the "delay" resulted from disparate treatment or discriminatory motive. According to the Complaint, Sumitomo discovered, and then promptly set out to investigate, Plaintiff's potential connections to a Russian entity with a similar name. Compl. ¶¶ 20–25.

Defendant's investigation into whether Plaintiff had any affiliation with an entity that Defendant could not legally lend to does not plausibly allege actionable discrimination. And Plaintiff fails to allege any comparators or other facts suggesting that Defendant was motivated by discriminatory intent with respect to this delay.

Despite the above issues with the third and fourth elements, Plaintiff insists that he has no obligation, at this stage, to plead a prima facie case of discrimination *at all*, and therefore he need not identify any comparators in order to satisfy the fourth element. Opp. at 5–7. Even if this were true, as Plaintiff concedes, he must still plead facts to support a plausible inference of discriminatory intent. *Id.* at 6. He has not done so. "Although the factual allegations in the [C]omplaint may be consistent with discrimination, 'given more likely explanations,'" such as the need to conduct a sanctions and compliance review, Plaintiff's allegations "do not plausibly establish discriminatory purpose." *Kwiatkowski v. Polish & Slavic Fed. Credit Union*, No. 11-CV-3947 (JG), 2011 WL 6225390, at *4 (E.D.N.Y. Dec. 12, 2011), *aff'd*, 511 F. App'x 117 (2d Cir. 2013) (cleaned up) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)).

The ECOA discrimination claim is therefore dismissed. *See Henry v. Flagstar Bank*, FSB, No. 16-CV-1504 (JMA), 2017 WL 11886155, at *4 (E.D.N.Y. Aug. 28, 2017) (dismissing ECOA claim where the plaintiffs were not denied a loan and failed to allege circumstances giving rise to an inference of discrimination on the basis of a protected class).

## II.     Plaintiff Fails to Plausibly Allege an ECOA Notification Claim

The Complaint only appears to allege discrimination under ECOA. Compl. ¶¶ 39–42. However, in his opposition, Plaintiff attempts to assert an ECOA notification claim for the first time. Opp. at 8. Generally, a Plaintiff cannot amend his complaint through opposition papers, and "allegations added in opposition to a motion to dismiss cannot cure defects in the operative

9

pleading." *Peffers v. Stop & Shop Supermarket Co. LLC*, No. 14-CV-3747 (VB), 2015 WL 5460203, at *5 n.5 (S.D.N.Y. June 9, 2015). The claim is therefore not properly before the Court.

But even if the Court were to consider this procedural claim, it would fail. "In addition to its anti-discrimination provisions, ECOA also establishes procedural requirements for extending credit and communicating with applicants." *Germain*, 111 F. Supp. 3d at 526 (cleaned up). Section 1691(d) provides that "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor" and that a creditor may satisfy this obligation by either providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or giving written notification of adverse action which discloses the applicant's right to a statement of reasons within thirty days and the identity of the person or office from which such statement may be obtained. 15 U.S.C. § 1691(d)(2)(A)–(B).

As alleged in the Complaint, the Court finds that Defendant did not take "adverse action" against Plaintiff by opting to first conduct a compliance review before issuing a formal approval of financing. ECOA defines "adverse action" as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). As explained above, Defendant did not actually deny Plaintiff's application. Nor did Sumitomo explicitly refuse to grant credit "in substantially the amount or on substantially the terms requested": the compliance (and approval) process remained ongoing before Plaintiff's unilateral demand for a "yes" or "no" answer. *See* ECF No. 1-1.

Moreover, as the Complaint and accompanying exhibits make clear, Defendant did not change, or refuse to comply with, the terms of an existing credit arrangement. As VP Gregory

explained, despite the prior "open" approval Plaintiff received, formal approval would be needed if Plaintiff purchased a truck in an auction for an unknown price. ECF No. 1-1 at 5. That is exactly what Plaintiff did, which therefore required Plaintiff to provide additional information so that VP Gregory could then "get it submitted to credit for approval." *Id.* at 6. More importantly, the initial "open approval" that Plaintiff references only provided financing up to $171,000. Plaintiff's auction purchase exceeded that amount by several thousand dollars. *Id.* ECOA is clear that the term "adverse action" "does not include a refusal to extend additional credit . . . **where such additional credit would exceed a previously established credit limit**." 15 U.S.C. § 1691(d)(6) (emphasis added).

Therefore, Plaintiff's unpled ECOA notification claim would also fail. *Cf. Germain*, 111 F. Supp. 3d at 534 (permitting notification claim where the plaintiff's application had been denied without any information or statement of reasons).

### III. Plaintiff Fails to Plausibly Allege a Section 1981 Claim

Defendant also seeks dismissal of the Section 1981 claim. Defendant argues that Plaintiff has alleged, at most, national origin or ancestry discrimination, neither of which are cognizable under the statute as discrimination on the basis of "race." Mem. at 6–10. Plaintiff responds that "race" includes ethnicity and ancestry, and that he therefore "falls precisely within the class of persons that [Section 1981] was intended to protect." Opp. at 4–5. Plaintiff goes on to argue that Defendant's "exclusive focus" on his Russian and Belarussian ancestry to "delay," and therefore effectively deny, his credit application amounts to discrimination. *Id.* at 5–7. For the reasons set forth below, the Court dismisses the Section 1981 claim as well.

To establish a claim under Section 1981, a plaintiff must allege facts in support of the following elements: that (1) the plaintiff is a member of a protected class based on race, (2) the

defendant intended to discriminate on the basis of race, (3) the defendant's discrimination concerned one of Section 1981's enumerated activities, and (4) the plaintiff's injury would not have occurred but-for the defendant's discrimination. *See Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 102 (S.D.N.Y. 2024). In addition, similar to Plaintiff's ECOA discrimination claim, discrimination claims under Section 1981 are analyzed under the *McDonnell* framework set forth above. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015) (applying *McDonnell* framework to Section 1981 claims).

Considering these elements, the Court first assumes, without expressly deciding, that Plaintiff's background as a person born in Russia, who grew up in Belarus, is covered under Section 1981. Although Section 1981 does not reference "race," the Supreme Court has construed it as forbidding racial discrimination so as to include discrimination based on "ancestry or ethnic characteristics." *Vill. of Freeport v. Barrella*, 814 F.3d 594, 605 (2d Cir. 2016) (quoting *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987)). Indeed, courts in this district have already treated individuals similar to Plaintiff as falling within the scope of Section 1981. *See, e.g.*, *Kiseleva v. Greenspan*, 755 F. Supp. 3d 367, 378 (S.D.N.Y. 2024) (accepting that plaintiff was a member of a racial minority within the meaning of Section 1981 where they claimed to be of Russian ancestry and Slavic ethnicity). Defendant also does not appear to challenge the third or fourth elements.

That leaves only the second element: whether Defendant intended to discriminate against Plaintiff based on his "race." The Court finds that, similar to the ECOA discrimination claim, the Complaint fails to plausibly allege discrimination by Defendant based on Plaintiff's Russian and Belarussian ancestry. While Plaintiff continues to emphasize that he only has a "minimal burden" at this stage, courts routinely dismiss Section 1981 claims where, as here, the plaintiff fails to

12

allege facts that suggest that the alleged discrimination occurred because of their race. *See Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 295 (S.D.N.Y. 2011) (collecting cases dismissing Section 1981 and 1982 claims). Plaintiff only alleges that Defendant delayed approving his financing after learning of his Russian ancestry. But the Complaint presents an "obvious alternative explanation" for this fact: namely, that Sumitomo became aware of a potential connection with a Russian entity, which required a risk and compliance analysis. *D.H. v. City of New York*, 309 F. Supp. 3d 52, 76 (S.D.N.Y. 2018) (citing *Twombly*, 556 U.S. at 567).

Plaintiff also characterizes Sumitomo looking at his social media history as an "unusual step." Compl. ¶ 19. But the Complaint alleges that Sumitomo did so only after learning of Plaintiff's Russian connection, and that his company shared the name with another company *in Russia and Belarus* "that [Sumitomo's] compliance has issues with . . ." ECF No. 1-1 at 11. And so the "obvious alternative explanation" is that Sumitomo merely checked Plaintiff's social media account to determine what, if any information, it could uncover about the Russian Byteks entity that it eventually asked Plaintiff about. The Complaint does not allege, for instance, that Sumitomo referenced, inquired about, or mentioned any specific activity from Plaintiff's social media accounts that would suggest any discriminatory motive. In sum, taken in context, and even drawing all inferences in Plaintiff's favor, the above allegations fail to plausibly allege discriminatory intent.

Finally, to the extent Plaintiff asks the Court to construe VP Gregory's statements as discriminatory, it declines to do so. None of the alleged statements have a "tendency to show the decision-maker was motivated by assumptions or attitudes related to the protected class." *Levy v. NYC Health + Hosps.*, 660 F. Supp. 3d 220, 232 (S.D.N.Y. 2023), *clarified on denial of reconsideration*, No. 21-CV-9142 (VEC), 2023 WL 4364203 (S.D.N.Y. July 6, 2023). Indeed,

13

the Complaint does not allege that VP Gregory had any decision-making ability at all: VP Gregory expressly stated he had no control over the compliance process, and was not himself in a position to give formal approval. Compl. ¶¶ 26, ECF No. 1-1 at 11.

In short, Plaintiff has merely alleged the "possibility" of discriminatory intent, not facts sufficient to suggest any such intent. The Section 1981 claim is therefore dismissed. *See D.H. v. City of New York*, 309 F. Supp. 3d at 76 (dismissing claim where the plaintiffs failed to allege discriminatory intent "above the speculative level"); *Baptiste v. City Univ. of New York*, 680 F. Supp. 3d 415, 423 (S.D.N.Y. 2023) (dismissing Section 1981 and NYSHRL claims where the complaint failed to give rise to even a "minimum inference of discrimination" because the relevant allegations were diminished and undercut by other facts alleged in the complaint).

### IV.     Plaintiff's NYSHRL and NYCHRL Claims Are Dismissed

Plaintiff previously notified the Court that he no longer intends to prosecute his claims pursuant to the NYSHRL and NYCHRL. ECF No. 23; *see also* Opp. at 12. These claims (Counts III and IV of the Complaint) are therefore dismissed with prejudice.

### V.      Plaintiff Is Granted Leave to Amend His Complaint

The Second Circuit interprets Rule 15 of the Federal Rules of Civil Procedure liberally "consistent with [its] strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (internal quotation marks and citation omitted); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). As such, Plaintiff shall be permitted an opportunity to amend his complaint to address the deficiencies with his ECOA and Section 1981 claims.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. Plaintiff shall file an amended complaint, if any, **within 30 days** of the date of this Order. Should Plaintiff fail to do so, the Court will dismiss the case with prejudice. The Clerk of Court is respectfully directed to terminate ECF No. 13.

Dated: August 29, 2025
       New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge