UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NIKOLAI SARAKHMAN,

Plaintiff,

-against-

SUMITOMO MITSUI FINANCE AND LEASING COMPANY, LTD.,

Defendant.

24-CV-5817 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Just a few days before Plaintiff Nikolai Sarakhman was set to receive final approval for a business loan, he revealed to his would-be financer that he was born in Russia and grew up in Belarus. This admission, Sarakhman alleges, caused Defendant Sumitomo Mitsui Finance and Leasing Company, Limited to intensely scrutinize him and deny him the loan—despite his renewed application being a mere formality. Sarakhman now brings claims under the Equal Credit Opportunity Act, 15 U.S.C. § 1961 *et seq.*, and the Civil Rights Act, 42 U.S.C. § 1981, seeking damages for a lost contract and the humiliation he says he experienced. Before the Court is Defendant's second motion to dismiss. Like Plaintiff's original complaint, the Amended Complaint does not plead facts that suggest Sumitomo actually or constructively denied Sarakhman's loan application or that permit an inference of discriminatory intent during the application process. The Court thus grants the Motion to Dismiss the Amended Complaint in its entirety for failure it to state a claim.

**BACKGROUND**

The following facts, unless otherwise noted, are taken from the Amended Complaint (ECF No. 30, "AC") and presumed to be true for the purposes of this Order. *See LaFaro v. N.Y.*

*Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). The Court assumes familiarity with its Opinion and Order on the prior motion to dismiss. *See* ECF No. 28 ("MTD Opinion").

Plaintiff Nikolai Sarakhman is a man of Russian and Belarussian descent who owns Byteks USA, LLC ("Byteks USA"). ¶ 6. Byteks USA is a licensed freight carrier. *Id.* Defendant Sumitomo Mitsui Finance and Leasing Company, Limited ("Sumitomo") is a Japanese multinational banking company that services commercial enterprises. ¶ 8. Plaintiff alleges that he applied for a $171,000 loan to purchase a truck in January 2023. ¶¶ 9, 13, 34. The loan, which Sumitomo approved on February 3, 2023, was to be held open for ninety days so that Sarakhman could purchase the truck he selected. ¶¶ 9–10. The approved truck sold to another buyer before Sarakhman could buy it, however. *See* ECF No. 30-1 at 4. So, halfway through the open loan period, Sarakhman found a different truck at auction he wanted to bid on. ¶ 12. Before finalizing the bid, Sarakhman notified his contact at Sumitomo, Jason Gregory, to request confirmation of the loan. ¶ 12. The next day, Gregory clarified that the open financing approval permitted up to $171,000 but that approvals "are based on the asset" and thus more information was needed to formalize the approval for the truck Mr. Sarakhman wanted. ¶ 13. That process "[s]hould not be a problem," Mr. Gregory told Plaintiff. ¶ 13. Thereafter, Sarakhman bought the freight truck for approximately $181,500, including auction fees. ¶ 14.

What happened next is the crux of this action. Shortly after Plaintiff purchased the truck—on a Friday[1]—he told Gregory about the purchase and was assured that the deal "should" be "reapproved" by the following Monday; Sarakhman only needed to submit the invoice and title copy. ¶¶ 14–15. The following week, Plaintiff sent Gregory the invoice, and the pair spoke

[1] The Amended Complaint identifies the date as Thursday, March 31, 2023, AC ¶¶ 14–15, but March 31, 2023 was a Friday, and the exhibits attached to the Complaint show that he informed Gregory on Friday, March 31, 2023, ECF No. 30-1 at 6.

on the phone. ¶¶ 16–17. During this conversation, Sarakhman revealed that he was originally from Russia and Belarus and had immigrated to the United States as a child. ¶ 17.

After his conversation with Gregory, Plaintiff alleges, the tenor of Defendant's due diligence changed. Sarakhman learned that Sumitomo was looking through his social media sites. ¶ 18. Twice in the same day, Gregory asked Plaintiff to confirm that he, Nikolai Sarakhman, was the sole owner of Byteks USA. ¶¶ 19–22. Later in the week, Gregory referred four questions from the compliance team to Plaintiff that focused on Byteks USA's presence in and relationship to Russia and Belarus. *See* ¶ 24. The Amended Complaint alleges that the "truthful[]" answer to those questions, which Mr. Sarakhman gave, is that the only connection Byteks USA had to Russia and Belarus was through Mr. Sarakhman's "roots." *Id*. Nonetheless, the exhibits attached to the Amended Complaint acknowledge that, in real time, Plaintiff told Gregory that Byteks USA previously bought Belarusian-made boots to sell in the United States. *See* ECF No. 30-1 at 13.

On April 10, 2023—one-and-a-half weeks after the truck purchase—Gregory informed Sarakhman that vetting continued to "drag[] along" because there was another company named "Byteks" in Russia and Belarus. ¶ 25. The next day, Gregory updated Sarakhman that the "Sanctions team" had completed their review and that the case would be sent to the "Reputational Risk division." ¶ 26. He also recommended that Sarakhman "pursue other financing" in the event that timely approval was not possible. *Id*. On April 17, 2023, Sarakhman told Defendant that he needed a yes or no answer on financing. ¶ 27. After all, "time was of the essence" in approving the loan. ¶ 44. At that point, Gregory told Sarakhman that, if a yes or no answer was needed, the answer was "no," because Gregory still "ha[d] not received a response" about due diligence. ¶ 28. Ultimately, Plaintiff applied for and received financing from a

different lender, although he alleges that the delay in securing a truck caused him to lose a "long-term contract with a large food distribution company." ¶¶ 51–52.

Sarakhman filed this action on July 31, 2024, alleging violations of federal, New York state, and New York City civil rights laws. ECF No. 1 at 4–7. Defendant previously filed a motion to dismiss, which the Court granted in full on August 29, 2025. ECF No. 13; MTD Opinion. In its Opinion, the Court found that Plaintiff had not pled facts to support that Defendant took any adverse action against Plaintiff or that Defendant's actions were motivated by discriminatory intent. MTD Opinion at 1. In fact, based on the original complaint and attached documents, the Court determined that there was a more likely explanation for Sumitomo's delay: the need to investigate Byteks USA's relationship with a Russian company of the same name while the Russo–Ukrainian war—and United States sanctions against Russia—continued to escalate. *Id.* at 9, 13.

Nonetheless, the Court granted Plaintiff leave to amend the Complaint, which Plaintiff did on September 30, 2025. *Id.* at 1; AC. The Amended Complaint omits claims under local and state law, which Plaintiff had separately dismissed, ECF No. 23, and asserts the following claims: (1) discrimination in processing Sarakhman's credit application because of his ancestry, ethnicity, and national origin under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1961 *et seq.*; (2) wrongful credit denial because of ancestry and ethnicity under the Civil Rights Act, 42 U.S.C. § 1981; and (3) failure to notify Sarakhman as to reasons for the credit denial under the ECOA. AC at 8–10. Defendant then filed a renewed motion to dismiss on October 24, 2025, which the parties fully briefed. *See* ECF Nos. 33–35, 38, 41.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). Where relevant, the Court may consider "documents attached to the complaint as exhibits," in addition to "the facts alleged in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). The Court may also "take judicial notice of," and thus consider, "publicly available documents." *Mira v. Kingston*, 218 F. Supp. 3d 229, 234 (S.D.N.Y. 2016), *aff'd*, 715 F. App'x 28 (2d Cir. 2017) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id.* at 679.

## DISCUSSION

The Court's discussion proceeds as follows. First, the ECOA discrimination claim is dismissed because Plaintiff does not allege facts supporting that his credit application with Sumitomo was denied or that similarly qualified applicants received loans from Sumitomo. Next,

the ECOA notification claim is also dismissed because Plaintiff does not allege an adverse action within the meaning of the ECOA. Finally, Plaintiff's Section 1981 claim fails because the pleadings do not permit a plausible inference of discrimination based on Sarakhman's ancestry, given the obvious, alternative explanation that Sumitomo required time to conduct a risk and compliance assessment of Byteks USA's apparent connections with sanctioned entities.[2]

## I. Plaintiff's ECOA Discrimination Claim Fails on Multiple Grounds

The ECOA prohibits creditors from discriminating against applicants in "any aspect of a credit transaction" because of race and national origin, among other protected traits. 15 U.S.C. § 1691(a)(1). Although courts utilize a burden-shifting analysis, a plaintiff need only make out a *prima facie* case of ECOA discrimination on a motion to dismiss. *See Germain v. M & T Bank Corp.*, 111 F. Supp. 3d 506, 525–26 (S.D.N.Y. 2015) (collecting cases applying the Title VII burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to ECOA claims); *Baptiste v. City Univ. of New York*, 680 F. Supp. 3d 415, 421 (S.D.N.Y. 2023) (explaining that, under the *McDonnell Douglass* framework, only the plaintiff's burden to allege a *prima facie* case of discrimination is at issue on a motion to dismiss). Thus, a plaintiff must allege facts showing that: "(1) he was a member of a protected class, (2) he applied for credit from the defendant, (3) he was qualified for credit but the defendant denied his credit application, and (4) the defendant continued to engage in the type of transaction in question with other parties with similar qualifications." *Germain*, 111 F. Supp. 3d at 526 (cleaned up). Though an "exceedingly low burden," a plaintiff must also provide "at least minimal support for the

[2] As discussed below, the Court takes judicial notice of various public records published by Byteks USA in its analysis. *See infra* section III. For those documents, "it does so in order to determine what statements they contained" but "not for the truth of the matters asserted." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (cleaned up).

proposition that the [defendant] was motivated by discriminatory intent." *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015); *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). The Second Circuit has noted that the burden may be met "by pointing to a defendant's use of 'ethnically degrading terms' or racially 'invidious comments,' a defendant's 'more favorable treatment of [individuals] not in the protected group,' or something suspicious in the 'sequence of events leading' to the challenged activity, among other things." *Frederick v. Cap. One Bank (USA), N.A.*, No. 14-CV-5460 (AJN), 2015 WL 5521769, at *4 (S.D.N.Y. Sept. 17, 2015), *opinion amended on other grounds sub nom. Frederick v. Cap. One (USA) N.A.*, No. 14-CV-5460 (AJN), 2015 WL 8484560 (S.D.N.Y. Dec. 8, 2015) (citing *Littlejohn*, 795 F.3d at 312).

The Court previously dismissed Plaintiff's ECOA discrimination claim because the original complaint failed to plausibly allege: (1) that Sumitomo in fact denied Plaintiff's loan application; (2) that it engaged in the same type of transaction with other similarly qualified parties; or (3) that it was motivated by discriminatory intent in its actions. *See* MTD Opinion at 8–9.

The Amended Complaint does not fare any better, and the Court takes each element in turn. Plaintiff still fails to allege that Sumitomo actually denied Plaintiff's loan application. Although inartfully argued, Plaintiff appears to contend that Sumitomo constructively denied his application by either an unreasonable delay or a "reversal of a previous decision to grant credit." ECF No. 38 ("Opp.") at 4–5. Both arguments are unavailing. As the Court previously acknowledged, "an *unreasonable* delay in assessing a credit application could give rise to an ECOA claim." MTD Opinion at 8 (citing *Thompson v. Marine Midland Bank*, 198 F.3d 235, 1999 WL 752961, at *2 (2d Cir. 1999)). But Plaintiff does not argue or plausibly allege that the

delay—though inconvenient for Sarakhman's timeline—was unreasonable. Before Sarakhman's ancestry ever came to light, Gregory warned Sarakhman that "it will take time for us to get a formal approval." ECF No. 30-1 at 5; *see also DiFolco*, 622 F.3d at 111 ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). Gregory repeatedly asked for "an invoice and some specs" to submit the approval request, but Sarakhman was not in a position to provide that information before purchasing the truck at auction. *See* ECF No. 30-1 at 4–5, 7–9. Ultimately, only two-and-a-half weeks passed between when Sarakhman informed Gregory of the purchase and when Sarakhman apparently abandoned the process with Sumitomo. *See* AC ¶¶ 15, 27–28. Throughout Sumitomo's due diligence, Gregory kept Sarakhman abreast of his application's progress. *See* ECF No. 30-1 at 9, 12–15. Accounting for the fact that Sarakhman did not provide the required documentation until April 2 or April 3, 2026, merely two weeks passed before the alleged constructive denial. AC ¶¶ 16, 27–28. Plaintiff provides no case law or argument as to why the Court should consider a delay of a couple weeks to be unreasonable under the circumstances—particularly when, as Defendant argues, the evolving landscape of political sanctions required extra scrutiny to ensure that Sumitomo did not run afoul of such sanctions through Byteks USA's ongoing sale of Belarusian made boots. ECF No. 34 ("MTD") at 1; ECF No. 30-1 at 13 (explaining that Byteks USA is "just liquidating leftovers" of "Belarusian made boots"); *see also* AC ¶¶ 19–24 (showing Sumitomo's prompt investigation into Plaintiff's potential connections to a Russian company bearing the same name as his company).

Plaintiff also does not make out a claim of effective denial based on the reversal of a previous decision to grant credit. As an initial matter, Plaintiff did not plead sufficient facts to

suggest that Sumitomo reversed a prior decision to give credit. Sumitomo representatives told Plaintiff from the beginning that "credit would need to final approve the exact unit" that he purchased. ECF No. 30-1 at 2. Indeed, the Amended Complaint makes clear that the initial approval was based on a different truck available for purchase at a lower price. *See* AC ¶¶ 33–34. Because that approved truck was sold to another buyer, *see* ECF No. 30-1 at 4, Sarakhman needed new approvals for a different, more expensive truck. Thus, Sarakhman functionally submitted a new—or renewed—application. Moreover, Sumitomo did not render a final decision on Sarakhman's renewed application, and thus even if such a "reversed" disposition were a possible outcome, it was not the result here. Sarakhman demanded an answer while Sumitomo was still in the process of conducting its due diligence. AC ¶¶ 27–28. As such, the Amended Complaint does not plead facts suggesting that "defendant denied his credit application," which dooms Plaintiff's ECOA discrimination claim. *Germain*, 111 F. Supp. 3d at 526 (cleaned up).

Furthermore, the Amended Complaint does not rescue Plaintiff's ECOA discrimination claim from its failure to allege that Sumitomo engaged in the same type of transaction with other similarly qualified parties. The Amended Complaint only adds a conclusory statement that other "applicants with similar qualifications are not subject to the same unreasonable and unwarranted delays . . . including . . . review by Defendant's Reputational Risk Division." AC ¶ 47. But "[t]hreadbare recitals" of an element, "supported by mere conclusory statements" do not satisfy that element. *Iqbal*, 556 U.S. at 678. Moreover, that the form of Sumitomo's *due diligence* differed among similarly situated applicants does not adequately allege that Sumitomo continued to *execute* the same type of transaction with those applicants. Thus, because Plaintiff fails to

allege at least two required elements of an ECOA claim, Plaintiff's ECOA discrimination claim is dismissed.[3]

## II. Plaintiff's ECOA Notification Claim Fails Because the Amended Complaint Does Not Allege an Adverse Action

When a creditor takes an "adverse action" against an applicant for credit, the ECOA requires the creditor to provide "a statement of reasons" for that action. 15 U.S.C. § 1691(d)(2). Plaintiff argues that Sumitomo violated this provision of the ECOA by failing to provide a "written statement explaining" why his application was "ultimately not approved." Opp. at 16.

Plaintiff's claim fails because he does not allege an adverse action within the meaning of the ECOA. The ECOA does not deem the mere failure to approve an application to be an adverse action. *See* 15 U.S.C. § 1691(d)(6). Rather, it defines an "adverse action" as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." *Id.* As relevant here, an adverse action requires a denial or revocation. For the same reasons stated above, Sumitomo never actually denied Plaintiff a line of credit or revoked a prior approval. *See supra* section I. Instead, Sumitomo's due diligence exceeded the time Sarakhman was willing to wait, and thus Plaintiff effectively withdrew his application.

Contrary to Plaintiff's argument, this result holds true whether the initial open offer was a provisional offer or a fully approved credit limit.[4] *Cf.* Opp. at 17. In the notification context, the "refusal to extend additional credit . . . where such additional credit would exceed a previously

[3] For substantially the same reasons explained below, Plaintiff also fails to allege discriminatory intent. *See infra* section III.

[4] Plaintiff contradictorily argues in the same brief that Defendant previously "approved Plaintiff's application" and that such an interpretation "clashes with reality" because Defendant "made clear that final approval is based on the purchased asset." Opp. at 5, 17. The Court here addresses both scenarios accordingly.

established credit limit" is not an "adverse action." 15 U.S.C. § 1691(d)(6). To the extent the initial open offer constituted an approved credit limit, the truck Sarakhman ultimately bought at auction, when including auction fees, exceeded the line of credit by approximately $10,000—or 6%—and thus any credit denial on that basis was statutorily precluded from being an adverse action. *See* ¶¶ 13–14. To the extent the initial open offer was provisional and required additional approvals to be finalized, Plaintiff still has not alleged an adverse action for all of the previously stated reasons that he has not alleged a denial or revocation of credit. The absence of a final decision, in addition to the $10,000 higher loan request, further stymies Plaintiff's arguments that there is an adverse action because Defendant "refus[ed] to grant credit in substantially the amount or on substantially the terms requested." *See* Opp. at 18 (quoting 15 U.S.C. 1691(d)(6)). Accordingly, Plaintiff's ECOA notification claim is dismissed.

## III. Plaintiff's Section 1981 Claim Fails Because the Amended Complaint Fails to Allege Facts That Give Rise to an Inference of Discrimination

The Amended Complaint, like the original complaint, alleges facts that do not permit an inference of discrimination based on Sarakhman's ancestry because of an obvious, alternative explanation. To establish a claim under Section 1981, a plaintiff must plead the following elements: "(1) the plaintiff is a member of a racial minority, (2) the defendant intended to discriminate on the basis of race, (3) the defendant's discrimination concerned one of Section 1981's enumerated activities, and (4) the plaintiff's injury would not have occurred but for the defendant's discrimination." *Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 745 F. Supp. 3d 68, 102 (S.D.N.Y. 2024) (citations omitted). The Court previously dismissed Plaintiff's

Section 1981 claim because Plaintiff failed to plausibly allege that Defendant intended to discriminate against him based on his Russian and Belarussian ancestry.[5] MTD Opinion at 12.

Plaintiff principally argues that an inference of discrimination is evident from (1) the time proximity of Sumitomo's enhanced due diligence to the revelation of Plaintiff's ancestry and (2) Sumitomo's pointed questions about Russia and Belarus. Opp. at 5–6, 15. Several factors undermine the plausibility of Plaintiff's argument. Plaintiff's own allegations make clear that Gregory—the man whose assurances Plaintiff relied on to think that his application would be processed quickly—had no actual control over the approval process. *Compare* Opp. at 5 (citing AC ¶ 13) (recounting Gregory's assurances that approval "[s]hould not be a problem") *with* AC ¶ 25 (noting Gregory's statement that he "ha[s] no control over this process" and was also "still waiting on *their* approval to move forward" (emphasis added)).

More importantly, the Amended Complaint acknowledges that Russia and Belarus were relevant because of more than just Plaintiff's ancestry: Byteks USA shared the same name as a company in Russia and Belarus and "had sold army boots from a Russian and Belarusian boot company." AC ¶ 25; Opp. at 6; *see also* ECF No. 30-1 at 13. In fact, Byteks USA was still actively selling Belarusian army boots while Sarakhman's loan application was pending—a fact that Sarakhman told Sumitomo. *See* ECF No. 30-1 at 13 (noting that Byteks USA was "liquidating" the remaining Belarusian boots in its possession). Thus, there was an "obvious alternative explanation" for Sumitomo's weeks-long due diligence into connections with Russia and Belarus. *D.H. v. City of New York*, 309 F. Supp. 3d 52, 76 (S.D.N.Y. 2018) (citing *Iqbal*, 556

[5] Like its prior Opinion, the Court here also assumes without deciding that Plaintiff's background as a person born in Russia, who grew up in Belarus, is covered under Section 1981. *See* MTD Opinion at 12 (describing the basis to consider discrimination based on ancestry as falling under Section 1981's auspices).

U.S. at 682). Byteks USA had recent commercial interactions with countries that were subject to United States sanctions and political controversy, and Sumitomo needed time to assess the legal and reputational ramifications of granting Byteks USA a loan. This information alone provides an obvious, alternative explanation to defeat an inference of discrimination as a plausible cause for Defendant's extended due diligence.

But Defendant offers further support for its need to investigate a connection between Byteks USA and Russia and Belarus. In the Motion to Dismiss, Defendant provides exhibits from Byteks USA's former website obtained via the "Wayback Machine" that are not in the Amended Complaint. *See generally* ECF No. 35. Ordinarily, it is "mandatory" for a court to convert a motion under Rule 12(b)(6) into a motion under Rule 56 when it considers materials outside the pleadings. *Global Network Comm'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). However, Defendant urges the Court to take judicial notice of these public materials from Byteks USA's former website. *See* MTD at 17 n.8 (citing *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015)). There is a growing "judicial consensus" that courts may also take judicial notice of "archived webpages available through the Wayback Machine." *Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 248–49 (S.D.N.Y. 2025) (citations omitted). That consensus is even stronger where, as here, Plaintiff does not dispute the authenticity of the exhibits. *Cf. Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 43 (S.D.N.Y. 2025) (declining to take judicial notice of screenshots from the Wayback Machine absent authentication where the authenticity of the documents is in dispute). Plaintiff offers no argument against consideration of Defendant's exhibits or any challenge to their authenticity, so, accordingly, the Court takes judicial notice of them.

In March 2023, Byteks USA's website held the company out as "an American representative of a Russian-based company" whose boots were "manufactured in Belarus." ECF No. 35 ¶ 3; ECF No. 35-1 at 3. The website explained that Byteks USA was the result of the Russian company's "need[] to expand our business to the United States," and that their boots were "used by special units and security forces around the world." *See* ECF No. 35-2 at 3. It goes on to state that the same models that Byteks USA sold had been designed as "tactical assault boots for special units" in Russia and were used "in conflict areas in Russia." *Id.* at 4. While the Court does not conclude that Byteks USA was in fact engaged in this conduct, the website shows a clear link between Russia, Belarus, and Byteks USA that was publicly available at the time Sarakhman's loan application was being evaluated. *See* AC ¶ 15; ECF No. 35 ¶ 3.

With the support of Defendant's exhibits, the result is even clearer: Just like the Court previously found, the obvious, alternative explanation for the extended due diligence—based on the Amended Complaint, the attached exhibits, and matters of which the Court takes judicial notice—is that Sumitomo became aware of Byteks USA's public connection with sanctioned entities and thus needed to conduct a risk and compliance analysis. While Plaintiff continues to emphasize that he only has a "minimal burden" at this stage, Opp. at 13, courts routinely dismiss Section 1981 claims where, as here, the plaintiff fails to allege facts that suggest that the alleged discrimination occurred *because of* the protected characteristic. *See Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 295 (S.D.N.Y. 2011) (collecting cases dismissing Section 1981 and 1982 claims).

Here, Plaintiff fails to allege any facts that plausibly suggest that this due diligence was based on Sarakhman's personal ancestry, when an obvious, alternative explanation exists. That, instead, the due diligence was conducted because of the public commercial activities of his

company. As Byteks USA acknowledged, "the devistating [sic] situation occurring in Ukraine" stirred up public controversy, which the company's seeming military connections made relevant. *See* ECF No. 35-3 at 2. There are no other facts alleged indicating that Sumitomo harbored any animus towards people of Russian or Belarusian ancestry or that Sumitomo treated similarly situated applicants without this ancestry differently. As a result, the Court finds that the pleadings do not give rise to an inference of discrimination based on race and dismisses Plaintiff's claim under Section 1981.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss is GRANTED in full. Because Plaintiff does not request leave to amend and, moreover, has already amended the complaint once with the benefit of the Court's prior—and substantially similar—Opinion, the Court *sua sponte* denies leave to file a second amended complaint. The Clerk of Court is directed to terminate ECF No. 33 and close the case.

Dated: August 3, 2026
White Plains, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge